IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE BENEFIT OF HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES TRUST 2018-PHH, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-PHH, acting by and through Situs Holdings, LLC, as special servicer under the Trust and Servicing Agreement, dated August 7, 2018,<br><br>Plaintiff,<br><br>v.<br><br>THOR URBAN OPERATING FUND, L.P.,<br><br>Defendant. | CIVIL ACTION NO. 1:24-cv-4339 |

**COMPLAINT FOR BREACH OF CONTRACT**

Plaintiff Wells Fargo Bank, N.A., not in its individual capacity, but solely in its capacity as Trustee ("Trustee") for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH ("Trust"), acting by and through Situs Holdings, LLC, as special servicer ("Special Servicer" or "Situs") under the Trust and Servicing Agreement, dated August 7, 2018, states as follows:

**INTRODUCTION**

1. Trustee's claims arise out of an approximately $333 million loan (the "Loan") made by the original lender, JPMorgan Chase Bank ("JPMCB"), to non-party Thor Palmer Hotel & Shops LLC ("Borrower").[1] The Loan's terms are set forth in a June 8, 2018, Loan Agreement (the

---

[1] The capitalized terms in this paragraph and throughout the Introduction are further defined below in the "Facts Common to All Counts" section of the Complaint. For the convenience of the Court, Attachment A is a list of the capitalized terms in the Complaint.

"Loan Agreement") and related documents, which contain representations and warranties made by Borrower to the original lender.  A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1.

2. The collateral securing Borrower's obligations under the Loan consists primarily of the Hilton Palmer House Hotel in Chicago (Cook County), Illinois (the "Hotel") including Borrower's rights of record in perpetuity to access and use space (meeting rooms, utility areas, employee cafeteria and restrooms) in an adjacent parcel.  The spaces in the adjacent parcel are necessary for the Hotel's operation.

3. On June 8, 2018, Borrower and JPMCB executed a series of documents (the "Loan Documents") in connection with the Loan to secure and protect JPMCB's interest in the Hotel and other property pledged to secure the Loan and to ensure that Borrower's obligations are satisfied. The Guaranty and Security Agreement (the "Guaranty"), dated June 8, 2018, is one of the Loan Documents.  A true and correct copy of the Guaranty is attached hereto as Exhibit 2.  Pursuant to Guaranty Section 1.3, Defendant Thor Urban Operating Fund, L.P. ("Guarantor"), an affiliate of Borrower, guaranteed it would pay to JPMCB the "Guaranteed Obligations" (defined in Guaranty Section 1.2) of Borrower when Borrower failed to pay them.

4. The Loan was later sold through an August 8, 2018, Mortgage Loan Purchase Agreement (the "MLPA").  The purchaser then assigned and deposited the Loan and related agreements, including the Loan Agreement and the Guaranty, into the Trust pursuant to the Trust and Servicing Agreement ("TSA"), dated August 7, 2018, to be administered and serviced by Trustee and its agents for the benefit of the Trust's beneficial interest holders.  The MLPA and TSA are attached hereto as Exhibits 3 and 4.

**Borrower Defaults, and Trustee Acts to Enforce the Loan Agreement.**

5. In April 2020, Borrower defaulted on its obligations under the Loan Agreement by

failing to pay debt service when due, and further defaulted in June 2020 by failing to pay the Loan at maturity. Trustee then acted to enforce the Loan Agreement and secure its rights in the Hotel and other property securing the Loan.

6. Trustee filed lawsuits to enforce its rights under the Loan Agreement and secure the collateral that are pending and have been consolidated in Cook County, Illinois between Trustee, on the one hand, and Borrower and Guarantor's/Borrower's affiliates on the other hand (the "Cook County Litigation"). As discussed below, if, in the Cook County Litigation, the court interprets various agreements related to the Loan and governing the operation of the Hotel consistent with the arguments advanced by Borrower and Borrower's/Guarantor's affiliates, then Borrower necessarily breached the Loan Agreement, and Guarantor is liable for damages caused by those breaches because the damages are Guaranteed Obligations under the Guaranty.

**The Underlying Agreements Amongst Borrower and Its Affiliates**

7. The Cook County Litigation arises out of Borrower's loan default and Borrower's 2005 decision to subdivide the larger Palmer House Hotel complex into three separate parcels, according to the operations conducted on each respective parcel. Borrower assigned ownership of two of these parcels to Borrower's/Guarantor's affiliates. Following Borrower's subdivision, the larger Hotel complex consisted of the following parcels, all owned by Borrower and its affiliates – (i) a Hotel parcel owned by Borrower and operated by Borrower's/Guarantor's affiliate, Thor Palmer House Hotel, LLC ("Thor Hotel"); (ii) a parcel of retail shops owned by Borrower's/Guarantor's affiliate, Thor Palmer House Retail Shops, LLC ("Thor Retail"); and (iii) an office/annex building (the "Annex") owned by Borrower's/Guarantor's affiliate, Thor Palmer House Office, LLC ("Thor Office").

8. The Hotel does not, and cannot, effectively operate without full operational access to the Annex. Similarly, the Annex does not, and cannot, effectively operate separately from the

Hotel. To address these issues following Borrower's subdivision of the Palmer House Hotel complex, Borrower and its affiliates Thor Retail and Thor Office executed and recorded a Reciprocal Easement and Operating Agreement dated December 11, 2006 (the "REA") that, among other things, grants the Hotel owner use and access rights in perpetuity to space in the Annex necessary and materially critical to the Hotel's operations, and grants the Annex owner use and access rights in perpetuity to space in the Hotel and retail shops.

9. Also in December 2006, Borrower's/Guarantor's affiliates, Thor Office and Thor Hotel entered into the first of several license agreements requiring Thor Hotel to pay Thor Office for the Hotel's access to and use of the Annex that is provided for in the REA. The license agreement at issue here is the December 11, 2009, Temporary License Agreement (the "Temporary License Agreement"), which was amended and extended by Borrower's/Guarantor's affiliates three times through August 9, 2018.

**Borrower's and its Affiliates' Arguments in the Cook County Litigation**

10. Borrower and Borrower's/Guarantor's affiliates are non-parties to this lawsuit but have asserted a counterclaim and defenses in the Cook County Litigation. Among other things, Borrower and Borrower's/Guarantor's affiliates now argue that the Temporary License Agreement expired, and that Trustee therefore has no use or access rights to the Annex space necessary for the Hotel operations. This position now asserted by Borrower and Borrower's/Guarantor's affiliates in the Cook County Litigation, if accepted in that action and adjudicated to be the correct interpretation of the relevant documents, would materially and adversely affect Hotel's operations.

11. Trustee has suffered damages and continues to suffer damages as a result of these actions by Borrower and Borrower's/Guarantor's affiliates, which constitute an injury in fact. Trustee has incurred, and continues to incur, substantial legal fees in defending the Cook County Litigation and challenging the arguments raised by Borrower and Borrower's/Guarantor's

affiliates. These arguments have raised uncertainty as to Trustee's ability to operate the Hotel, and the value of the Hotel in any sale following foreclosure.

**Borrower's Breaches of the Loan Agreement**

12.   Trustee is defending the claims asserted in the Cook County Litigation. If the Court in the Cook County Litigation determines, however, that Borrower and Borrower's/Guarantor's affiliates are correct regarding the scope and effect of the Temporary License Agreement, then Borrower necessarily breached its representations and warranties in the Loan Agreement through intentional misrepresentations or gross negligence. In such event, those breaches have caused Trustee losses for which Guarantor is liable under the Guaranty.

13.   Trustee brings this action to preserve and prosecute claims against Guarantor to pay the Guaranteed Obligations under the Guaranty, which are the damages resulting from Borrower's intentional misrepresentations or gross negligence that have breached Loan Agreement representations and warranties, in the event Trustee's defenses in the Cook County Litigation are unsuccessful, and the Court determines the scope and effect of the Temporary License Agreement are consistent with the arguments made by Borrower and Borrower's/Guarantor's affiliates.

## PARTIES, JURISDICTION, AND VENUE

14.   Plaintiff Trustee is a national banking association with its designated main office located in Sioux Falls, South Dakota. As a national bank, Trustee is a citizen of South Dakota where its main office is located. Trustee acts as the trustee for the beneficiaries of the commercial mortgage-backed security Trust known as the J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH.

15.   Non-party Situs is the Special Servicer, and Trustee acts by and through the Special Servicer pursuant to the TSA. As such, Situs services and manages the Loan and enforces the terms of the Loan Documents.

16. Defendant Guarantor is a limited partnership organized under the laws of Delaware with its designated main office in New York, New York. Guarantor is a party to the Guaranty.

17. Non-party JPMCB is a national bank association with its designated main office located in Columbus, Ohio. As a national bank, JPMCB is a citizen of Ohio.

18. Borrower, a non-party to this proceeding, is a co-mortgagor of the Hotel, and the obligor under the Loan Agreement that has been assigned to Trustee by operation of the TSA. Borrower is a party to the REA but is not a party to the Temporary License Agreement.

19. Non-party Thor Office is Borrower's and Guarantor's affiliate that owns the Annex. Thor Office is a party to the REA and the Temporary License Agreement.

20. Non-party Thor Retail is Borrower's and Guarantor's affiliate that owns the retail shops. Thor Retail is a party to the REA but is not a party to the Temporary License Agreement.

21. Non-party Thor Hotel is Borrower's and Guarantor's affiliate that is the Operating Lessee of the Hotel. Thor Hotel is a party to the Temporary License Agreement but is not a party to the REA.

22. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

23. Venue is proper in this Court pursuant to Section 7.3 of the Guaranty and 28 U.S.C. § 1391(c) & (d).

## FACTS COMMON TO ALL COUNTS

**A.    The Hotel and Related Real Estate Parcels**

24. The address of the Hotel is 17 East Monroe Street, and it features 1,641 guestrooms, more than 130,000 feet of meeting space, seven ballrooms and restaurants. The Hotel's facilities and amenities are located on 21 floors of a building, which also contains retail shops located on

multiple floors.

25.     The Annex is a separate building attached to the Hotel. The Annex contains critical mechanical systems for providing the Hotel with air conditioning, telephone, and internet services. The Annex also contains the Hotel's employee cafeteria, meeting rooms and storage space, and the Hotel's lobby-area restrooms located adjacent to the Hotel's front desk.

26.     Borrower purchased the real property comprising the larger hotel, retail, and office complex in August 2005. At that time, the Hotel, Annex, and retail shops were part of a single legal parcel, sharing the Palmer House parcel legal description and street address.

27.     In December 2006, Borrower split ownership of this larger complex of the Hotel, Annex, and retail shops among three affiliated entities, with (i) Borrower retaining ownership of the real estate improved with the Hotel, with its affiliate Thor Hotel serving as the Operating Lessee of the Hotel, (ii) Thor Office acquiring the Annex, and (iii) Thor Retail acquiring retail shops located within the Hotel. The Real Property Transfer Tax Declaration attached to the vesting deeds granted to Thor Office and Thor Retail states that "no consideration" was given for Borrower's transfers because each was a "transfer to a related entity."

**B.      The Reciprocal Easement Agreement and the License Agreement**

28.     Following Borrower's separating ownership of these three parcels, the Hotel, Annex, and retail shops continued operating as before the parcels were broken out into three parcels. Each entity continued to access and use space located in the parcels of its affiliated entities.

29.     Borrower and Borrower's/Guarantor's affiliates recognized that the Hotel and retail shops could not be operated separately from the Annex, and the Annex could not be operated separately from the Hotel and retail shops. Accordingly, Borrower, Thor Office and Thor Retail executed and recorded the REA in December 2006. True and correct copies of the REA dated

December 11, 2006, and its amendment, are attached hereto as Exhibit 5.

30. The REA provides continued access and usage rights amongst the parcels that run with the land in perpetuity for the benefit of future owners. This was critical for Borrower and the Hotel, which could not be operated without access to the mechanical components and use of other facilities in the Annex.

31. In December 2006, Thor Office and Thor Hotel entered into the first of a series of license agreements and amendments thereto. The operative license agreement is the December 11, 2009, Temporary License Agreement, which purports to grant rights to the Hotel's owner no greater than those rights granted in the REA. The Temporary License Agreement provides a stream of income to Thor Office, as the owner of the Annex, by requiring the Hotel to pay a monthly fee for ongoing use of the Annex. The term of the last amendment to the Temporary License Agreement expired on August 9, 2018. A true and correct copy of the original 2006 license is attached hereto as Exhibit 6. True and correct copies of the December 11, 2009, Temporary License Agreement, and subsequent amendments are attached hereto as Exhibit 7.

32. Neither the original license agreement, the Temporary License Agreement, nor any amendments thereof, have been recorded in any governmental official records. Borrower and Thor Office did not enter into any written license agreement for any period after August 9, 2018.

33. The REA is a 203-page publicly-recorded document. The Temporary License Agreement is a 5-page unrecorded document not otherwise publicly available.

34. The Hotel would not have been financeable through a commercial lender if, as Borrower, Thor Office and Thor Hotel now allege in the Cook County Litigation, the Temporary License Agreement is the sole grant of use rights to space in the Annex necessary for the Hotel's operations because such rights are not addressed in the REA. That is so because access and use of the Annex space is critically important to operation of the Hotel. As discussed below, this

allegation as to the scope of the Temporary License Agreement was not made by Borrower and Borrower's/Guarantor's affiliates until 2022, when Trustee moved for summary judgment in the Cook County Litigation and to obtain a dismissal of all of Borrower's affirmative defenses.

**C.     The Loan**

35.    On June 8, 2018, JPMCB and Borrower entered into the Loan Agreement. Borrower also executed a Promissory Note dated June 8, 2018, in the original principal amount of $333,200,000 (the "Note").  A true and correct copy of the Note is attached hereto as Exhibit 8.

36.    Also, on June 8, 2018, Guarantor executed the Guaranty (Ex. 2) promising to pay the Guaranteed Obligations of Borrower under the Loan Agreement.  As explained below, those Guaranteed Obligations include damages caused by Borrower's intentional misrepresentations or gross negligence that breached representations and warranties in the Loan Agreement.  If the position now asserted by Borrower and Borrower's/Guarantor's affiliates concerning the Temporary License Agreement's scope is adjudicated to be the correct interpretation of the relevant documents, Borrower will have breached the Loan Agreement, and the resulting damages are Guaranteed Obligations for which Guarantor is liable.

37.    To secure Borrower's obligations under the terms of the Loan, Borrower and Thor Hotel, as co-mortgagors, granted to JPMCB, as the original mortgagee, and to its successors and assigns, senior perfected security interests in the Hotel and all other property owned by the co-mortgagors or in which the co-mortgagors had an interest, including, but not limited to, all easements (including the rights provided under the REA), all rights pursuant to a lease between Hilton and Borrower, and additional rights, evidenced by, among other things, a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated June 8, 2018 and recorded in the Official Records on June 12, 2018 as Document No. 1816317208.  A true and correct copy of the Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture

Filing dated June 8, 2018, is attached hereto as Exhibit 9.

38. The Loan Documents, including the Loan Agreement, the Note, the Mortgage, the Guaranty, and all other documents evidencing, securing, or relating to the Loan, have been endorsed or assigned to Trustee.

39. Borrower made representations and warranties in the Loan Agreement that the Hotel had the ability to operate in the manner it was operating. Inherent in that representation and warranty is the Hotel's unencumbered access and use of the Annex and its facilities.

40. Trustee is informed and believes that the Temporary License Agreement was an accommodation that allowed Borrower's affiliates, Thor Office and Thor Hotel, to transfer funds and share expenses resulting from Hotel's operations and had no bearing on Hotel's right to access and use space in the Annex.

41. Trustee is defending the Cook County Litigation based on its information and belief as stated above.

**D.    The Cook County Litigation**

42. Borrower defaulted on the Loan in April 2020 by failing to pay debt service when due, and further defaulted in June 2020 by failing to pay the Loan at maturity.

43. In response to Borrower's default, Trustee filed a foreclosure action on August 20, 2020 styled as *Wells Fargo Bank, N.A., as Trustee for the benefit of holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH v. Thor Palmer House Hotel & Shops LLC, a Delaware limited liability company, et al.*, Case No. 2020 CH 05460 (Circuit Court of Cook County, Illinois, Chancery Division) (the "Foreclosure Action").

44. On August 24, 2020, Trustee filed a motion to appoint a receiver for the oversight of the Hotel and related mortgaged property. Trustee's motion was granted on October 21, 2020,

and remains in effect.

45. On February 17, 2022, Trustee filed a motion for summary judgment in the Foreclosure Action, which was granted by an order dated July 6, 2022. A judgment was entered on August 16, 2022.

46. On May 16, 2022, during briefing on Trustee's motion for summary judgment, Thor Office asserted a claim in the amount of $864,574.10 for purported past-due amounts owed to Thor Office under the Temporary License Agreement.

47. On June 14, 2023, Thor Office issued notice to Thor Hotel that Thor Office was terminating the Temporary License Agreement, copying Trustee's counsel. Thor Office demanded $897,826.95 for outstanding fees purportedly due under the Temporary License Agreement and stated that unless Trustee paid this amount, Trustee would be required to vacate the Annex and return that space to Thor Office. A true and correct copy of Thor Office's termination notice is attached as Exhibit 10. Trustee disputes that any amounts are owed to Thor Office under the Temporary License Agreement.

48. In response to the disputes over the scope of the REA and Temporary License Agreement, on July 11, 2023, Trustee filed a second lawsuit in Cook County, Illinois styled as *Wells Fargo Bank, N.A., as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH, and Chad Crandell, solely in his capacity as court-appointed receiver in Case No. 2020CH05460 v. Thor Palmer House Office, LLC, a Delaware limited liability company; Thor Palmer House Hotel & Shops LLC, a Delaware limited liability company; and Thor Palmer House Hotel LLC, a Delaware limited liability company*, Civil Action No. 2023 CH 06380 (the "Access Action").

49. The Access Action seeks a declaration that the scope of the REA is sufficiently

broad to provide the Hotel with access and use rights to space in the Annex. The Annex space is critical to the Hotel's routine operations as it was before Borrower assigned ownership in the Annex to its affiliate Thor Office because, among other reasons, the Hotel lobby's restrooms and utility rooms are in the Annex.

50. On October 17, 2023, Thor Office filed a counterclaim in the Access Action asserting that the now-terminated Temporary License Agreement granted the sole and exclusive rights to use and access the Annex space described therein. Thor Office seeks damages in the Access Action for unpaid license fees and an order evicting the Hotel from the Annex.

51. In the Access Action, Trustee is asserting that the REA, not the Temporary License Agreement, grants Hotel the right to use and access the Annex space as it existed when Borrower divided the parcel and assigned ownership of the Annex to its affiliate Thor Office.

52. The Foreclosure Action and the Access Action were consolidated by order of the Court in the Cook County Litigation on or about May 3, 2024.

53. As part of its claim in the Cook County Litigation, Trustee contends it is industry custom and practice for a commercial mortgage loan to be secured by property in which the borrower/mortgagor has sufficient use and access rights necessary for the borrower/mortgagor to operate its property.

54. Borrower and Borrower's/Guarantor's affiliates' assertion in the Cook County Litigation that the Temporary License Agreement grants the sole and exclusive rights to use and access the Annex space, and that such rights are unique from those rights granted in the REA, are inconsistent with the representations and warranties in the Loan Agreement. Such contentions also conflict with industry custom and practice because:

    a. Borrower, which owned the Hotel that required access to the Annex, is not a party to the Temporary License Agreement. Instead, Thor Hotel – the Operating Lessee

       of the Hotel – is a party to the Temporary License Agreement.

    b. The Temporary License Agreement is purportedly cancellable at any time (subject to a 30-day notice) by Thor Office, which cancellation would – again, according to Borrower's/Guarantor's affiliate Thor Office – terminate the use and access rights in the Annex necessary for operation of the Hotel.

    c. The Temporary License Agreement states that the rights granted to Thor Hotel are not assignable, which would restrict the rights of a new owner, a foreclosing mortgagee, or a court-appointed receiver to operate the Hotel following Borrower's default.

    d. The REA, on the other hand, grants use and access rights in perpetuity; if there were unique rights granted in the Temporary License Agreement necessary to operate the Hotel, industry custom and practice dictate that such rights would be addressed in the REA.

    e. The term of the Temporary License Agreement was significantly shorter than the Loan's term and would require renewal; the Temporary License Agreement did not include limitations or protections to Borrower, as the Hotel owner, against fee increases in future renewals, or that the Temporary License Agreement would be renewed.

    f. The Temporary License Agreement does not state that it is the sole and exclusive agreement granting the Hotel access and use rights to the Annex space.

55. Trustee is asserting arguments in the Cook County Litigation consistent with its understanding of the representations and warranties made by Borrower in the Loan Agreement, the express terms of the REA and Temporary License Agreement, and industry practice.

56. Trustee is defending against the arguments leveled by Borrower and

Borrower's/Guarantor's affiliates in the Cook County Litigation and, as of the date of filing this pleading, has incurred legal expenses in defending the counterclaim and addressing the Temporary License Agreement arguments and defenses asserted by Borrower's/Guarantor's affiliates in the Cook County Litigation.  These expenses continue to accrue and increase during the pendency of the Cook County Litigation.  Trustee further cannot quantify the precise amount or types of other damages that it will incur if it loses its access and use rights to the Annex, and Trustee is subject to significant uncertainty regarding its ability to operate the Hotel after its rightful foreclosure.

### E.  Obligations of Thor Urban Under the Guaranty

57. Pursuant to Section 1.3 of the Guaranty, Guarantor agreed to pay the Guaranteed Obligations of Borrower if Borrower failed to perform those obligations.

58. The term Guaranteed Obligations is defined in Guaranty Section 1.2 to include, among other things, Borrower's obligations under Loan Agreement Section 9.3.  Section 9.3(b) of the Loan Agreement, in pertinent part, provides:

> "(b) Nothing contained herein shall in any manner or way release, affect or impair any right of Lender to enforce the liability and obligation of Borrower, by money judgment or otherwise, to the extent of any loss, damage, cost, expense, liability, claim or other obligation to the extent actually incurred by Lender (including reasonable attorneys' fees and costs reasonably incurred) arising out of or incurred in connection with the following:
>
> (i) fraud or intentional misrepresentation by Borrower, Operating Lessee or Guarantor in connection with the Loan.
>
> (ii) the gross negligence or willful misconduct of Borrower, Operating Lessee or Guarantor."

Exhibit 1 at 128.

### F.  The Loan Agreement Representations and Warranties

59. If the court accepts the position advocated in the Cook County Litigation by Borrower and Borrower's/Guarantor's affiliates regarding the Temporary License Agreement,

then Borrower and Thor Hotel made intentional misrepresentations or acted with gross negligence, including but not limited to the falsity and breach of Borrower's representations and warranties in the Loan Agreement. Guarantor is liable for the damages caused by those breaches, misrepresentations and gross negligence. The applicable Loan Agreement representations and warranties are described below.

60. In Section 4.1.5 of the Loan Agreement, Borrower represented and warranted that neither Borrower nor Thor Hotel was party to any agreement or instrument, nor subject to any restriction, which would be reasonably likely to affect Borrower materially and adversely, Thor Hotel, the Hotel property, or the business, properties or assets, operation or condition (financial or otherwise) of Borrower or Thor Hotel. The interpretation, scope and effect of the Temporary License Agreement and REA, as now alleged in the Cook County Litigation by Borrower and Borrower's/Guarantor's affiliates, is an agreement and a restriction that materially and adversely affects the Hotel property, Borrower and Thor Hotel, and their business, properties and assets, operations, and condition, financial and otherwise. Borrower made an intentionally misleading or establish that grossly negligent representation and warranty.

61. In Section 4.1.8 of the Loan Agreement, Borrower represented and warranted that the Loan Documents did not contain any untrue statement of material fact or omitted any material fact necessary to make statements in the Loan Documents misleading. The interpretation, scope, and effect of the Temporary License Agreement and REA, as alleged by Borrower and Borrower's/Guarantor's affiliates, render such Loan Documents intentionally misleading or Borrower was grossly negligent when the representation and warranty was made.

62. In Section 4.1.33 of the Loan Agreement, Borrower represented and warranted that the documents and information provided by Borrower were true, complete, and accurate in all material respects. The interpretation, scope, and effect of the REA and Temporary License

Agreement, as now alleged by Borrower and Borrower's/Guarantor's affiliates in the Cook County Litigation, render such documents materially misleading. Borrower made an intentionally misleading or grossly negligent representation and warranty.

63. In Section 4.1.11 of the Loan Agreement, Borrower represented and warranted that neither Borrower nor Thor Hotel had any unusual forward or long-term commitments that would have a material adverse effect on Borrower or Thor Hotel's financial condition or the value of the property. The interpretation, scope, and effect of the Temporary License Agreement, as now alleged in the Cook County Litigation by Borrower and Borrower's/Guarantor's affiliates including Thor Hotel, are in fact unusual forward or long-term commitments that would have a material adverse effect on Borrower's and/or Thor Hotel's financial condition, as well as the value of the property. Borrower made an intentionally misleading or grossly negligent representation and warranty.

64. In Section 4.1.22 of the Loan Agreement, Borrower represented and warranted that the Hotel had the necessary rights, permits, licenses, and certifications necessary to continue operating as a hotel and that Thor Hotel would keep and maintain all licenses necessary for the operation of the Hotel. The interpretation, scope, and effect of the Temporary License Agreement and REA, as now alleged by Borrower and Borrower's/Guarantor's affiliates in the Cook County Litigation, would mean that the Hotel did not in fact have such licenses and approvals. Borrower made an intentionally misleading or grossly negligent representation and warranty.

65. In Section 4.1.33 of the Loan Agreement, Borrower represented and warranted that all material facts had been disclosed, and there were no material facts that had not been disclosed that could cause a representation or warranty to be materially misleading. The interpretation, scope, and effect of the Temporary License Agreement and REA, as now alleged by Borrower and Borrower's/Guarantor's affiliates in the Cook County Litigation, render such documents

materially misleading. Borrower made an intentionally misleading or grossly negligent representation and warranty.

66. In Section 4.1.33 of the Loan Agreement, Borrower represented and warranted that all material facts had been disclosed, and there were no material facts that had not been disclosed that could cause a representation or warranty to be materially misleading. The interpretation, scope, and effect of the Temporary License Agreement and REA, as alleged by Borrower and Borrower's/Guarantor's affiliates, render such documents materially misleading. Borrower made an intentionally misleading or grossly negligent representation and warranty.

67. In the event Borrower and Borrower's/Guarantor's affiliates are correct in their position asserted in the Cook County Litigation, then all these representations of Borrower were in fact intentional misrepresentations or, alternatively, made in a grossly negligent manner.

68. Through Section 4.2 of the Loan Agreement, Trustee relied on all representations, warranties, covenants, and agreements made in the Loan Agreement and the other Loan Documents.

69. The Hotel cannot operate effectively without access to, and use of, the Annex space described in the Temporary License Agreement.

70. Each condition precedent has occurred or been performed. Trustee demands that Guarantor pay the Guaranteed Obligations.

## COUNT I

### Breach of Contract
### (Material Breach of the Guaranty)

71. Trustee incorporates paragraphs 1 through 70 as if fully set forth herein.

72. The Guaranty is governed by New York law and constitutes a contract under New York law.

73. Access to and use of the Annex space is critical to the effective operation of the

Hotel.

74. The Loan Agreement contains representations and warranties, as described above that:

    a. Borrower represented and warranted that neither Borrower nor Thor Hotel was party to an agreement or instrument, nor subject to a restriction, which would be reasonably likely to materially and adversely affect either Hotel or Borrower.

    b. Borrower represented and warranted that there was no material financial obligation under any agreement or instrument to which either Borrower or Thor Hotel was a party, other than certain defined ordinary course obligations and obligations under the Loan Documents.

    c. Borrower represented and warranted that there was no untrue or misleading statement of facts in the Loan Documents or material facts omitted from the Loan Documents, or that any of the Loan Documents were misleading in any material respect.

    d. Borrower represented and warranted that there were no long-term commitments or other circumstances that would have materially and adversely affected Borrower's or Thor Hotel's financial condition, or the value of the Hotel property.

    e. Borrower represented and warranted that the documents and information provided by Borrower were true, complete, and accurate in all material respects.

    f. Borrower represented and warranted that Borrower and Hotel had all licenses, permits and approvals necessary to operate the Hotel as it had been historically operating.

    g. Borrower represented and warranted that Borrower had disclosed all material facts related to the Loan and operation of the Hotel and it had not failed to disclose any

material fact that could cause other information to be materially misleading.

75. Trustee had the right to rely on each representation and warranty in the Loan Documents notwithstanding any investigation by Trustee or its predecessor in interest.

76. If Borrower's and Borrower's/Guarantor's allegations concerning the scope of the Temporary License Agreement are adjudicated to be correct in the Cook County Litigation, then Borrower breached the foregoing representations and warranties in the Loan Agreement. The foregoing breaches are based on intentional misrepresentations or gross negligence because the alleged facts in the counterclaim were known to Borrower when it executed the Loan Agreement.

77. As a result of these breaches, Trustee has incurred damages for legal fees to defend the counterclaim and to address defenses in the Cook County Litigation and continues to incur damages defending the claim and addressing defenses. Such damages continue to accrue and increase.

78. Further, if Borrower and Borrower's/Guarantor's affiliates prevail in the Cook County Litigation, the Hotel may lose its access to and use of the Annex space and would incur additional damages as a result. In the interim, the position asserted by Borrower and Borrower's/Guarantor's affiliates in the Cook County Litigation has raised uncertainty as to Trustee's ability to operate the Hotel, and the value of the Hotel in any sale following foreclosure.

79. Under the Guaranty, Guarantor is liable for the intentionally misleading or grossly negligent breaches of representations and warranties made by Borrower in the Loan Agreement as described above.

80. Guarantor also is liable because Borrower made statements that there was nothing misleading regarding the documents and representations made by Borrower in the Loan Documents and the foregoing statements were intentionally misleading or grossly negligent. Therefore, Trustee has the right to pursue all remedies allowed under the Guaranty and New York

law against Guarantor.

81. Trustee is entitled to damages from Guarantor in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Trustee respectfully requests that the Court enter a judgment:

a. Declaring that Borrower has breached the Loan Agreement through intentional misrepresentations or gross negligence.

b. Declaring that Guarantor is liable for the damages caused by Borrower's breaches of the Loan Agreement.

c. Awarding actual damages to Trustee in an amount to be proved at trial, including the cost; and expense of defending against the claims made in the Cook County Litigation, and in this proceeding.

d. Awarding such other and further relief as the Court deems necessary or appropriate.

DATED: June 6, 2024
New York, New York

**KILPATRICK TOWNSEND & STOCKTON LLP**
**1114 Avenue of the Americas**
**New York, New York 10036**
212.775.8700
fwhitmer@kilpatricktownsend.com
**Attorney for Wells Fargo Bank, N.A., Not in Its Individual Capacity, but solely in its Capacity as Trustee for the Benefit of Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2018-PHH, Commercial Mortgage Pass-Through Certificates, Series 2018-PHH, acting by and through Situs Holdings, LLC, as special servicer under the Trust and Servicing Agreement, dated August 7, 2018**

By:  /s/ Frederick L. Whitmer
       FREDERICK L. WHITMER (FW-8888)
       A Member of the Firm